IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| SARA DOMRES and RANDALL BERTH, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>JEFFERSON COUNTY, WISCONSIN, and TRAVIS MAZE in his official capacity as JEFFERSON COUNTY SHERIFF,<br><br>　　　　Defendants. | **CLASS ACTION COMPLAINT**<br>JURY TRIAL DEMANDED<br><br>CASE No. 3:26-cv-50 |

## INTRODUCTION

1.  In Jefferson County, Wisconsin, employees of the Sheriff's Office charge a mandatory booking fee of $26.38 to certain individuals booked into the Jefferson County Jail. This mandatory booking fee is not charged pursuant to a criminal conviction or civil judgment, and it is imposed without any judicial review. It is not a voluntary payment for any desired service, and it is not a component of posting bail. It is not charged under any duly authorized tax-statute regulating voluntary lawful behavior. In our system of government, law enforcement officials cannot permanently deprive someone of property unless that person has been judicially ordered to make a payment after an adjudication of fault, has chosen to receive a service, or is subject to a tax.

2.  Jefferson County charges its mandatory booking fee to those arrested on suspicion of a parole violation. The fee flows solely from the fact of arrest and is not refunded if it is determined that the arrested individual did not violate his or her parole; in other words, it is based

1

solely on the judgment of one arresting officer — not any adjudicative body or consenting patron. The booking fee is different than any other fee, and it has no basis in law. Jefferson County's mandatory booking fee is inconsistent with the due process enshrined in our system of government.

3. Officials at the Jefferson County Jail seize the fee without notice or an opportunity to be heard. At intake, they simply remove cash from an arrestee's wallet. If the arrestee does not have cash, jail officials recover the booking free later from any tax refund due the arrestee. Regardless of the method, consent is never sought nor required.

4. Naturally, law enforcement officers have power over individuals in service of their law enforcement functions, but our system of law does not permit this power-differential to be the sole authority for deprivation of property. For example, officials at the Jefferson County Jail are armed with firearms, batons, handcuffs, and other physical restraints. They control the locks and keys to the jail cells, and they control access to corridors throughout the facility. Without any judicial process or oversight, officials at the Jefferson County Jail rely on their physical power-differential to force payment from anyone being booked.

5. All other non-consensual exactions of property by law enforcement officials require adjudication of fault and are backed by an adjudicative process. Collection of court-ordered fees, fines, repossessed property, real estate during an eviction, civil forfeiture, and traffic fines are all protected by due process — *i.e.*, a court or other adjudicative body oversees and approves the deprivation. In no other instance is someone forcibly deprived of money left without judicial recourse or forced to file an affirmative lawsuit to recover their money.

6. Individuals consensually give their money to the government for desired services, such as applying for a passport or renewing a driver's license. Being arrested is not a service, and being booked in jail is not a service (at least not to the person being booked). Abstractly, those law

enforcement actions are services to the taxpayers at large, but Jefferson County is not charging its booking fees to the general public. It is charging them arbitrarily and unilaterally to non-consenting individuals.

7. Governments can impose taxes, but such impositions must be statutorily enacted and allow those subject to the tax the option to voluntarily avoid it. For example, taxes on cigarettes, alcohol, vehicle-registration, income, and capital gains can all be avoided by a voluntary choice to abstain from the taxed conduct.

8. The Jefferson County Jail extracts payment without any judicial authority, desired service, or taxing authority.

9. While criminal courts may impose fines, fees, restitution, and costs as part of a sentence after a conviction, our constitutional framework does not authorize law enforcement agencies to forcibly seize those monies in advance of adjudication by a court.

10. In addition to the fundamental arbitrariness of a booking fee, the Jefferson County Jail makes no exception for those who are innocent, who are later exonerated, or whose arrests lacked probable cause. This lack of exception is an additional violation of due process.

11. The Jefferson County Jail charges its mandatory booking fee without any pre-deprivation process to assess who should or should not be charged the fee, without any notice of or opportunity to dispute the fee, and without any post-deprivation process for having the fee reimbursed. The mandatory booking fee is imposed without pre- or post-deprivation process — indeed, the Jefferson County Jail provides no process whatsoever.

12. The mandatory booking fee is not charged to all arrestees. Although it would be unconstitutional in all instances, it suffers from an additional arbitrariness: without any explanation or rational basis, the fee is charged to arrestees brought in on suspicion of parole violations; other

3

arrestees are not charged the fee.

13. For multiple reasons, Jefferson County's booking fees violate due process and equal protection. Most fundamentally, due process prohibits a government from unilaterally extracting money without judicial adjudication of fault, a voluntary exchange, or a statutorily authorized tax on voluntary conduct. On top of this fatal flaw, the booking fee is unconstitutional because Jefferson County fails to provide reimbursement for the innocent, pre-deprivation process, post-deprivation process, or any rational basis for selectively charging parolees but not other arrestees.

**PARTIES**

14. Plaintiff Sara Domres is a 37-year-old resident of Sullivan, Wisconsin. She was on a form of parole — extended supervision by the Wisconsin Department of Corrections and Community Supervision — and is subject to lifetime GPS tracking as a result of her 2016 conviction for Sexual Assault.

15. Plaintiff Randall Berth is a 67-year-old resident of Watertown, Wisconsin. He is currently subject to a form of parole — extended supervision — and will be until 2032.

16. Defendant Travis Maze is the Sheriff of Jefferson County, Wisconsin, and he heads the Jefferson County Sheriff's Office. Defendant Maze is sued in his official capacity as a county policymaker and administrator. Defendant Maze is directly responsible for the policies and procedures of the Jefferson County Sheriff's Office, which is the sole entity responsible for the operation of the Jefferson County Jail and for establishing, implementing, collecting, and enforcing booking fees at the jail.

17. Defendant Jefferson County is a county in the state of Wisconsin and is financially responsible for the operations of the Jefferson County Sheriff's Department and the Jefferson

County Jail.

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1334 because this suit presents a federal question and seeks relief pursuant to federal statutes providing for the protection of civil rights. This suit arises under the United States Constitution and 42 U.S.C. § 1983.

19. This Court has personal jurisdiction over Defendant Jefferson County and its officers because Jefferson County is a Wisconsin county where the events identified in this complaint occurred. This Court has personal jurisdiction over County and State officers for their acts within Wisconsin.

20. This Court has personal jurisdiction over Sheriff Travis Maze in his official capacity as Jefferson County Sheriff because he is an officer of a Wisconsin county where the events identified in this complaint occurred.

21. Venue is proper in the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### A.   Defendant Charges Mandatory Booking Fees

22. Defendant Jefferson County Sherriff's Office charges $26.38 as a mandatory booking fee to parolees taken into custody for suspected parole violations.

23. Defendant's mandatory booking fee is not imposed pursuant to any adjudication of fault. It is charged upon booking, without any court authorizing it. It does not flow from a criminal conviction, civil judgment, or any other court-process. It does not involve an impartial decision-maker.

24. Defendant's mandatory booking fee is not a voluntary exchange for any desired service. It is automatically charged upon being booked in the jail. It is not a component of the bail process. Even individuals who do not post bail are charged the fee.

25. Defendant's mandatory booking fee is not a tax. It has not been authorized by any duly enacted tax-law, and it does not regulate behavior that can be voluntarily avoided.

26. Defendant provides no notice of the mandatory booking fee.

27. Defendant's mandatory fee cannot be challenged or objected to.

28. Defendant provides no pre-deprivation process before charging the mandatory booking fee.

29. Defendant provides no post-deprivation process after collecting its mandatory booking fee.

30. Defendant has the sole authority to set the amount of the mandatory booking fee. The amount has not been determined by any judicial or legislative body. It involves no impartial decision-maker.

31. Neither the Wisconsin Department of Corrections nor any other state agency requires Defendant to charge a booking fee.

32. Defendant collects its mandatory fee without consent. If an individual subject to the fee has cash in her wallet upon booking, Defendant will simply remove the cash to collect its fee. Defendant does not seek or receive consent for collecting its fee.

33. For individuals without cash, Defendant sends a bill to the arrestee and/or recovers the booking fee later from any tax refund due the arrestee.

34. Defendant provides no opportunity for reimbursement. In particular, Defendant does not reimburse its booking fee for those who are later found to be innocent, those whose parole

holds are cancelled, those who were wrongfully arrested, those who are unable to afford the fee, or those for whom the fee imposes an undue hardship (such as sacrifice of basic necessities).

35. Defendant's mandatory booking fee is only charged to those booked on suspicion of a parole violation. In other words, only parolees are charged the fee; other arrestees are not.

36. Defendant offers no rational basis for singling out parolees for its mandatory booking fee.

37. A parole hold is a mechanism for holding a parolee in jail upon suspicion of an alleged parole violation or other parole related offense.

38. According to the Department of Corrections website, a parolee may be placed on a parole hold for any of the following reasons: investigation of alleged violation of a rule or condition of supervision, after an alleged violation to determine whether to commence revocation proceedings, disciplinary purposes, to prevent possible violation by the offender, or pending placement in a program as an alternative to revocation.

39. The standard for executing a parole hold is reasonable suspicion of a parole violation, rather than the higher standard of probable cause for making an arrest of a person who is not under supervision.

40. Investigation of a parole violation frequently results in the cancellation of a parole hold and the release of a parolee prior to any judicial proceedings, further distinguishing this process from a standard criminal arrest, arraignment, and subsequent procedures.

41. Jefferson County Jail automatically charges parolees a "booking fee" upon entry into the jail. Defendant does not consider whether or how quickly the parole hold is cancelled or whether, as in Plaintiffs' cases, there is never any finding of culpability.

42. For parole holds that are cancelled with no finding of a parole violation or

commencement of revocation proceedings, parolees do not have any subsequent hearings or opportunity to contest the booking fees.

### B. Defendant Held Plaintiff Sara Domres at the Jefferson County Jail on a Parole Hold and Charged Plaintiff Domres a Booking Fee for that Hold

43. While on extended supervision, Plaintiff Sara Domres was required to wear a GPS tracking device. Although her extended supervision ended on December 7, 2024, she remains subject to lifetime GPS monitoring under Wisconsin law.

44. Ms. Domres's tracking device is connected to the Wisconsin Department of Corrections Electronic Monitoring Center, which monitors the movements of individuals subject to GPS tracking and which has the authority to issue arrest warrants when the device sends an alert for suspected tampering or malfunction of the device.

45. When an individual is on parole or another form of supervision (such as probation or extended supervision), the Electronic Monitoring Center receives reports whenever a device alerts. Parole agents typically review those alerts and decide whether a parolee should be taken into custody after investigating the cause of the alert.

46. The Electronic Monitoring Center also has the authority to automatically issue arrest warrants without any human review when an alert is received outside of normal business hours.

47. On Sunday, September 1, 2024, at 6:11pm, Ms. Domres's GPS tracking device alerted, creating a report with the Electronic Monitoring Center.

48. According to Defendant's incident report (#202400025329), Ms. Domres's last known location at the time of the alert was her home.

49. Because Ms. Domres's device alerted outside of business hours, the Electronic Monitoring Center automatically generated a warrant, which was dispatched to the Jefferson

County Sheriff.

50. Sheriff's deputies arrested Ms. Domres based on the warrant and booked her in the Jefferson County Jail on a parole hold.

51. Defendant charged Ms. Domres a $26.38 "booking fee" upon her entry into the jail.

52. Defendant gave no notice of this booking fee, did not provide any pre-deprivation process for challenging it, did not have any judicial authority for demanding it, and did not provide Ms. Domres any desired service in exchange for the fee.

53. Ms. Domres had cash on her person at the time of her arrest, and Defendant removed that cash from her possession to pay the booking fee without Ms. Domres's consent.

54. Defendant's standard practice for a parole hold is to keep the supervisee in the County Jail until they receive authorization from the supervisee's parole agent to release the supervisee.

55. Defendant does not investigate the reason for warrant issuance (in this case, the device alert) or assess whether the device may have lost signal, run out of battery, or otherwise malfunctioned through no fault of the person subject to monitoring.

56. September 1, 2024, was a Sunday, and the following day, September 2, was Labor Day, a federal holiday.

57. Ms. Domres was not released until September 3, 2024, at 8:29am, when her parole hold was canceled.

58. Defendant never gave Ms. Domres the opportunity to post bail, nor did she receive any other service in exchange for her booking fee.

59. There are no facts to support any assertion that Ms. Domres's device alert was caused by anything other than a malfunction of the device.

60. Ms. Domres was never charged with any parole violation or crime on the basis of this parole hold.

61. Despite Ms. Domres's lack of culpability for the parole hold, Defendant did not refund her booking fee.

62. When Defendant released Ms. Domres, Defendant did not advise her of any available avenue by which she could request a refund of her booking fee.

63. Defendant has never advised Ms. Domres of any avenue by which she could request a refund of her booking fee.

64. Ms. Domres was never provided a process by which she could appeal her booking fee. She was never provided an impartial decision-maker, nor is one available.

65. Defendant does not provide any process for reimbursement of the booking fee.

C. **Defendant Held Plaintiff Randall Berth at the Jefferson County Jail on a Parole Hold and Charged Plaintiff Berth a Booking Fee for that Hold**

66. Plaintiff Randall Berth wears a GPS tracking device as a condition of his extended supervision.

67. On Sunday, July 27, 2025, the Electronic Monitoring Center received an alert from Mr. Berth's GPS tracking device.

68. Because Mr. Berth's device alerted outside of business hours, the Electronic Monitoring Center automatically generated a warrant, which was dispatched to the Jefferson County Sheriff.

69. At 9:15pm on July 27, 2025, Sheriff's deputies arrested Mr. Berth based on the warrant and booked him in the Jefferson County Jail on a parole hold.

70. Defendant charged Mr. Berth a $26.38 "booking fee" upon his entry into the jail.

71. Defendant gave no notice of this booking fee, did not provide any pre-deprivation

process for challenging it, did not have any judicial authority for demanding it, and did not provide Mr. Berth any desired service in exchange for the fee.

72. Defendant's standard practice for a parole hold is to keep the supervisee in the County Jail until they receive authorization from the supervisee's parole agent to release the supervisee.

73. Defendant does not investigate the reason for warrant issuance (in this case, the device alert) or assess whether the device may have lost signal, run out of battery, or otherwise malfunctioned.

74. Mr. Berth was not released until Monday, July 28, 2025, when his parole hold was canceled and he was released to his parole officer, who permitted him to return home without issue.

75. Defendant never gave Mr. Berth the opportunity to post bail, nor did he receive any other service in exchange for his booking fee.

76. There are no facts to support any assertion that Mr. Berth's device alert was caused by anything other than a malfunction of the device.

77. Mr. Berth was never charged with any parole violation or crime on the basis of this parole hold.

78. Despite Mr. Berth's lack of culpability for the parole hold, Defendant sent Mr. Berth a bill for $30.60, accounting for the booking fee and minor jail incidentals.

79. Defendant delivered Mr. Berth a letter advising him of the $26.38 booking fee.

80. Pursuant to Defendant's letter, should the bill remain unpaid, Defendant advised that Mr. Berth would be subject to interception of his tax refund, civil judgment, and related court costs.

81. Defendant's letter, provided to Ms. Berth only because Defendant could not take his monetary property at the jail at the time of booking, advised that any review would be conducted by the jail, and provided no avenue for appeal to a court or judicial body.

## CLASS ALLEGATIONS

82. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Sara Domres and Randall Berth bring this action on behalf of themselves all others similarly situated as representatives of the following classes:

   a. <u>Main Booking Fees Class (Count One)</u>: All individuals who have been or will be charged a booking fee when booked at the Jefferson County Jail.

   b. <u>Legally Innocent Class (Count Two)</u>: All individuals who (i) have been or will be charged a booking fee when booked at the Jefferson County Jail, (ii) were not later convicted of the charge for which they were booked, and (iii) lacked pre- or post-deprivation opportunities to be heard on the erroneousness of their booking fee due to legal innocence.

   c. <u>Parolee Class (Count Three)</u>: All parolees, probationers, or supervised individuals who have been or will be charged a booking fee when booked at the Jefferson County Jail despite similarly situated arrestees not being charged a booking fee.

83. As described below, the classes satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation required by Rule 23(a)(1), (2), (3), and (4) of the Federal Rules of Civil Procedure to proceed as a class action.

84. Because of the risk of inconsistent adjudications or prejudice to absent class members, as well as the request for injunctive relief and damages, the proposed classes also meet

the requirements of Rule 23(b)(1), (2), and (3).

### A. Numerosity: Fed. R. Civ. P. 23(a)(1)

85. The number of people in the proposed classes are so numerous that joinder of all members is impracticable. Each class is composed of hundreds of members.

86. Each class is comprised of every person who has been or will be booked at the Jefferson County Jail subject to a parole hold.

87. Given that the Jefferson County Jail typically holds 145–160 individuals at a time, and given that the jail population shifts on a rotating basis, it is logical that a significant portion of those individuals booked are charged a booking fee under the challenged policy.

88. Based on the low threshold for parole holds, it is reasonable to assume that a majority of individuals on parole have been booked for a parole hold at one time or will be in the future.

89. Ascertainability of the exact number of class members is readily achievable through analysis of Defendant's records.

### B. Commonality: Fed R. Civ. P. 23(a)(2)

90. The relief sought by each class is common to all class members: ceasing the practice of charging booking fees and reimbursement for fees unjustly collected.

91. There are issues of law and fact common to the classes. Among the common issues of law and fact are:

    a. Whether a governmental entity can charge a mandatory booking fee where there is no judicial finding of fault, where there is no exchange for a desired service, and where there is no taxing authority to do so.

    b. Whether the Jefferson County Sheriff charges a mandatory booking fee for

13

any individuals booked at the Jefferson County Jail.

c. Whether charging a booking fee to someone who is legally innocent, later exonerated, or otherwise not convicted of the charge on which they were booked violates the Due Process Clause when there are no pre- or post-deprivation procedures for waiver or reimbursement.

d. Whether the Jefferson County Sheriff fails to provide for pre- or post-deprivation procedures for waivers or reimbursement based on legal innocence.

e. Whether charging mandatory booking fees to parolees but not to other arrestees violates the Equal Protection Clause.

f. Whether the Jefferson County Sheriff charges mandatory booking fees only to a subset of those booked in the Jefferson County Jail.

g. Whether a sheriff's office can use its physical power to coerce payment when it lacks judicial authority, a desired service, or taxing authority.

C. **Typicality: Fed. R. Civ. P. 23(a)(3)**

92. Defendant charged Plaintiffs Sara Domres and Randall Berth a booking fee when they were booked on a parole hold. Plaintiffs were not and were never determined to be at fault for the parole hold. Plaintiffs had no mechanism for objecting to or requesting the return of the booking fee. Plaintiffs have suffered harms in the same way as other members of the classes. Plaintiffs' claims are typical of the proposed classes.

93. Defendant has charged all class members a booking fee.

94. Defendant has denied pre- and post- deprivation procedures to all class members.

95. All class members have no mechanism for requesting the return of their booking

14

fee.

### D. Adequacy: Fed. R. Civ. P. 23(a)(4) and 23(g)

96. Plaintiffs will fairly and adequately represent the interests of the classes. Plaintiffs have no claims antagonistic to those of the classes. In support of this proposition, Plaintiffs would show that they are members of the proposed classes; they have an interest in representing the proposed classes; they have no interests adverse to the rest of the class members; and they have suffered the same harm as the proposed classes.

97. Class counsel will fairly and adequately represent the interests of the classes. Plaintiff is represented by attorneys from Equal Justice Under Law and by Adele Nicholas and Mark Weinberg. Equal Justice Under Law attorneys have experience in litigating complex civil rights matters in federal court, particularly with regard to fines and fees. Adele Nicholas and Mark Weinberg possess similar experience, with the addition of significant practice in the Seventh Circuit. Class counsel have extensive knowledge of the relevant constitutional and statutory law. Class counsel also have a detailed understanding of state law and county practices as they relate to federal constitutional requirements.

98. Counsel have devoted significant time and resources to becoming intimately familiar with how the Jefferson County Jail operates, specifically as to charging and collecting booking fees. Counsel have also developed relationships with some of those victimized by Defendant's practices. The interests of class members will be fairly and adequately protected by the named Plaintiffs and their attorneys.

### E. Injunctive Relief and Damages – Fed. R. Civ. P. 23(b)(2) and (3)

99. The classes seek injunctive relief under Rule 23(b)(2) to enjoin Defendant from charging booking fees. Such injunctive relief is appropriate because Defendant has acted in the

same unconstitutional manner with respect to all class members, and an injunction prohibiting Defendant from charging booking fees would provide relief to every class member.

100. The classes also seek damages for the fees that they have been unconstitutionally charged and for which they have paid. A class action is superior to any other available method for the fair and efficient adjudication of this controversy. All class members pay the same fees to Defendant. Individual adjudications would be inefficient (because the likely recovery of any individual class member would be swallowed up by litigation costs) and risk inconsistent rulings, even though every adjudication would turn on the same policies — namely, Defendant's policy of charging booking fees. This case is far more manageable as a class action than as individual adjudications because of the common issues of fact and law, which prevail over any minor individual differences among class members. Thus, certification under Rule 23(b)(3) is also appropriate.

## CLAIMS FOR RELIEF

### Count One:
### Violation of Due Process for Charging a Mandatory Booking Fee.

101. Plaintiffs incorporate by reference each and all of the previous allegations in the complaint.

102. Due process limits governmental exactions of money to three circumstances: (i) fines, fees, restitution, and costs ordered by an adjudicatory body after a criminal conviction or civil judgment, (ii) voluntary exchange for a desired service, and (iii) duly authorized taxes regulating voluntary behavior. In no other circumstance is a government authorized to take money from an individual.

103. While a criminal court can impose fines, fees, restitution, and costs as part of a criminal sentence after a conviction, nothing in our system of law authorizes an arresting officer

to exact those payments prior to trial.

104. "Being arrested is not a 'service' to the person arrested!" *Markaonatos v. Village of Woodbridge*, 760 F.3d 545, 551 (7th Cir. 2014) (Posner, J., concurring in the judgment of an equally divided court), and being booked into jail is not a service to the person booked. Defendant's fee is not part of the servicing of bail.

105. Defendant's policy of charging a booking fee without any judicial determination of fault, without a voluntary exchange for a desired service, and without taxing authority violates the Due Process Clause.

**Count Two:**
**Violation of Procedural Due Process for Failure to Provide Notice, an**
**Opportunity to be Heard, and an Impartial Decision-Maker on the Issue of Culpability**

106. Plaintiffs incorporate by reference each and all of the previous allegations in the complaint.

107. Many individuals booked in the county jail will later be acquitted or otherwise exonerated. Many are booked after a wrongful arrest. All are legally innocent until convicted. Yet Defendant provides no notice and no opportunity to be heard on the issue of fault.

108. Defendant would bear little to no administrative burden by waiting for a determination of culpability prior to charging a booking fee or providing reimbursement for those later exonerated. Indeed, many other fees can be and are imposed after a conviction — that is, after a judicial determination of culpability — and fees charged prior to conviction can be reimbursed.

109. A government "may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." *Nelson v. Colorado*, 581 U.S. 128, 136 (2017) (requiring reimbursement of fees after reversal of conviction) (emphasis in original).

110. Defendant's policy of charging booking fees without notice, opportunity for a

hearing, and impartial decision-maker on the issue of culpability violates the Due Process Clause.

## Count Three:
## Violation of Equal Protection for Charging
## Booking Fees to Parolees but Not Other Arrestees

111.   Defendant violates equal protection by charging booking fees to arrestees brought in on parole holds but not to other arrestees.

112.   As stated in *City of Cleburne, Tex. v. Cleburne Living Ctr.*, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." 473 U.S. 432, 439 (1985).

113.   Defendant has no rational basis for treating parolees differently than other arrestees.

114.   Defendant's policy of charging parolees booking fees is arbitrary, has no rational basis, and is a violation of the Equal Protection Clause.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs request that the Court issue the following relief:

a.   A declaratory judgment that Defendant's policies, practices, acts, and/or omissions as described herein are unlawful and violate Plaintiffs' and Class Members' rights under the Constitution and laws of the United States;

b.   An order and judgment preliminarily and permanently enjoining Defendants, their subordinates, agents, employees, representatives, and all others acting or purporting to act in concert with them or on their behalf from charging booking fees;

c.   An order for damages compensating Plaintiffs and class members for the money of which Defendant has erroneously deprived them;

d.   An order and judgment granting reasonable attorneys' fees and costs pursuant to 42

U.S.C. § 1988, and any other relief this Court deems proper.

e.  Plaintiff demands trial by jury.

>Respectfully submitted,
>
>*/s/ Phil Telfeyan*
>Phil Telfeyan
>Caroline McCance*
>Equal Justice Under Law
>400 7th St. NW, Suite 602
>Washington, DC 20004
>(202) 505-2058
>ptelfeyan@equaljusticeunderlaw.org
>
>*/s/ Mark Weinberg*
>Law Office of Mark G. Weinberg
>3612 N. Tripp Avenue
>Chicago, Illinois 60641
>(773) 283-3913
>mweinberg@sbcglobal.net
>
>*/s/ Adele D. Nicholas*
>Law Office of Adele D. Nicholas
>5707 W. Goodman Street
>Chicago, Illinois 60630
>(847) 361-3869
>adele@civilrightschicago.com
>
>*Counsel for Plaintiffs*
>*\*petition to appear pro hac vice forthcoming*